**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**AT LONDON**

**CIVIL ACTION NO. 19-37-DLB-HAI**

**GARY DOUG GIBSON**                                                                         **PLAINTIFF**

**v.**                              **MEMORANDUM OPINION AND ORDER**

**AHF, LLC**                                                                                     **DEFENDANT**

\* \*   \* \*   \* \*   \* \*   \* \*   \* \*   \* \*

## I.    INTRODUCTION

This matter is before the Court on Defendant's Motion for Summary Judgment in this age discrimination and breach of contract case (Doc. # 27).  The Motion has been fully briefed, (Docs. # 32 and 33), and is now ripe for the Court's review.  For the reasons set forth herein, Defendant's Motion for Summary Judgment is **granted.**

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Gary Doug Gibson, filed the instant case in the Pulaski Circuit Court on December 27, 2018 against his former employer, Defendant AHF, LLC d/b/a AHF Products ("AHF")[1] asserting an age discrimination claim under the Kentucky Civil Rights Act ("KCRA"), Ky. Rev. Stat. § 344.040(2) and a common-law breach of contract claim. (Doc. # 1-2).  Thereafter, Defendant AHF removed the case to the Eastern District of Kentucky on February 6, 2019.  (Doc. # 1).  On March 6, 2020, AHF moved for summary judgment on both Plaintiff's KCRA claim and breach of contract claim.   (Doc. # 27).

---

[1]      The Complaint was originally filed against Armstrong World Industries, (*see* Doc. # 1-2); however, on August 2, 2019 the Court entered the parties' Agreed Order substituting AHF for Armstrong World Industries, (*see* Doc. # 18).

Plaintiff responded on April 6, 2020 (Doc. # 32) and AHF replied on April 20, 2020 (Doc. # 33).  This Motion is now ripe for the Court's review.

At the time of the incident giving rise to this litigation, Plaintiff was working as a day shift Lead at Armstrong's plant in Somerset, Kentucky.  (Docs. # 27-1 at 3, 18, and 32 at 1).  He was fifty-eight years old.  (Doc. # 1-2 at 2).  Gibson was responsible for supervising his team of workers and ensuring they conducted their work in a safe manner.  (Doc. # 32-4 at 3).  Gibson's job description as Lead outlined his responsibility for safety:

> **Supervisors & Leads**
> Proactive safety leadership means taking the necessary steps to return every employee home to their loved ones each and every day.  This include[s]: identifying the opportunity, having the courage to act, assessing the situation, formulating a response, responding with conviction, and following up.  Never walk past an unsafe or at risk situation.

(*Id.*).  Gibson was directly supervised by George Jones, and Jones was supervised by Eddie Stearns.  (Docs. # 27 at 2 and 27-2 at 11, 14).  Plaintiff stated he had issues with Jones due to "nit picking."  (Doc. # 32 at 1).

Prior to the incident that led to Gibson's termination, Gibson claims Stearns made remarks related to his age on at least five or six occasions between 2016 and 2017.  (Doc. # 27-1 at 68).  These remarks were limited to "when are you going to retire?," "when are you getting out of here?," and were not accompanied by a suggestion that Gibson retire or leave his position.  (*Id.* at 63, 71, 74).  Further, no comments were made about Gibson's age.  (*Id.* at 73).  Gibson responded to these remarks by saying "I don't know. I'm going to try to make it to my retirement age," to which Stearns would laugh.  (*Id.* at 69-70).  Gibson recalls one incident happening in Stearns's office and another occurring in the break room.  (*Id.* at 70).  Gibson considered himself and Stearns to be friends.  (*Id.*).

Jones had a few performance-based discussions with Plaintiff directing him to ensure other employees were following safety procedures. (Docs. # 27 at 2-3, 32-1 at 1, and 32-2 at 1). Following these discussions, Greg Roy, a member of Gibson's team, "committed a major safety violation" on October 11, 2017. (Doc. # 27 at 3). While operating a forklift, Roy dropped a pallet of plywood from an elevated position. (Docs. # 27-3 at 36 and 27 at 3). Gibson observed the accident, looked to see if anyone was in the area where the pallet fell, and then radioed his supervisor, Jones, to report the incident. (Doc. # 27-1 at 64-65). Jones arrived a few minutes later. (*Id.*). Gibson left the scene when Jones arrived, taking no further action. (Doc. # 27-3 at 36).

Upon reviewing a video of the incident, AHF managers, including Stearns, observed other safety violations in Gibson's area committed by Gibson and members of the team he supervised. (Docs. # 27-5 at 1 and 27 at 3-4). AHF suspended Gibson on October 23, 2017 and terminated him two days later. (Docs. # 27-1 at 62 and 32 at 1-2). AHF also terminated Roy, age fifty-seven, the driver of the forklift, and reprimanded other members of Gibson's staff relating to their actions on October 11, 2017. (Doc. # 27-5 at 2). The decision to terminate Gibson was made by Stearns, Brumbaugh (the plant manager), and Human Resources, and was approved by upper management. (Doc. # 27-5 at 1-2).

AHF contends that the forklift incident, along with Gibson's history of reprimands, was the reason for his termination. (Doc. # 27 at 5). In support of this contention, AHF provides the Major Safety Violation Occurrence Report ("the Report"), which stated that following the incident, Gibson "walked off; failing to remove employees from the unsafe condition" and that "this was a serious safety offense that allowed employees to remain

in an unsafe working condition without [Gibson] interceding." (Doc. # 27-3 at 36). Gibson, on the other hand, contends that the real reason for his termination was his age and argues that he followed protocol by notifying his supervisor of the forklift incident. (Doc. # 32 at 4, 10-11).

On January 23, 2018, Gibson attempted to collect severance pay under the Severance Pay Plan for Salaried Employees ("the Plan"), which is the basis for his breach of contract action. (Doc. # 32-3 at 1). According to Plaintiff, based on the Plan, he would be entitled to thirty-eight weeks of pay. (Doc. # 1-2 at 2). AHF did not respond to this request or provide reasons for denying Gibson's severance claim until the instant litigation was filed. (Doc. # 32 at 2). The Plan provides severance for employees under specific conditions. (Doc. # 27-6 at 5). These conditions state that an employee is eligible for severance only if terminated without cause and due to a reduction of force or the elimination of an employee's position. (Doc. # 27-6 at 5-6). The Plan is administrated through AHF's Severance Pay Committee ("the Committee"). (*Id.* at 7). The Committee is solely responsible for administering the Plan, deciding who is eligible for the Plan, and handling appeals to denials of benefits. (*Id.* at 3-4, 5-7, 9). If the Committee determines a terminated employee is eligible for severance pay, a lump-sum benefit will be paid out in an amount that is based on the length of the employee's service and salary when terminated. (*Id.* at 7, 12). The Plan further provides that in order to receive benefits, the terminated employee must sign a waiver releasing "then existing rights and claims" against AHF. (*Id.* at 6-7).

III.     **ANALYSIS**

A.      **Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party moving for summary judgment "bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. American Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) (citing *Plant v. Morton Int'l Inc.*, 212 F.3d 929, 934 (6th Cir. 2000)).  In deciding a motion for summary judgment, the Court must draw all reasonable inferences in favor of the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Following the Court's review of the record, if a "rational factfinder could not find for the nonmoving party, summary judgment is appropriate." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

1.      *Age Discrimination Claim*

First, Defendant argues that Plaintiff's age discrimination claim fails as a matter of law because Plaintiff cannot prove discriminatory pretext.  (Doc. # 27 at 7).  Kentucky courts have adopted the federal standards used in assessing claims brought under the Age Discrimination in Employment Act ("ADEA") for age discrimination claims brought under the Kentucky Civil Rights Act ("KCRA").  *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 393 (6th Cir. 2008).  The KCRA provides that it is unlawful for an employer to terminate an individual "because of the individual's . . . age forty (40) and over."  KRS §

5

344.040(1)(a).

A plaintiff bringing an age discrimination claim "must prove that age was a determining factor in the adverse action that the employer took against him or her." *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1023 (6th Cir. 1993) (citing *Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 229-30 (6th Cir. 1990)). A plaintiff can establish an age discrimination claim by either direct or circumstantial evidence. *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). Direct evidence is that which "requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Allen*, 545 F.3d at 394 (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc)). Alternatively, circumstantial evidence "does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Id.*

While Plaintiff claims that his suit is based on both direct and circumstantial evidence, the only proof he provides is questions by his supervisor, Stearns, asking Plaintiff when he was planning on retiring. (Doc. # 32 at 5, 8). The Sixth Circuit has held that comments concerning retirement made by employers to their workers nearing 60 years of age does not constitute direct evidence of age discrimination. *Williams v. Tyco Elec. Corp.*, 161 F. App'x. 526, 534 (6th Cir. 2006) (citing *Rowan v. Lockheed Martin Energy Sys.*, 360 F.3d 544, 548 (6th Cir. 2004)). Therefore, Plaintiff must follow the burden-shifting framework established in *McDonnell Douglas* in order to prove his age discrimination case by circumstantial evidence. *Allen*, 545 F.3d at 394 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

Under the familiar *McDonnell Douglas* burden-shifting framework, a plaintiff must first establish a prima facie case of age discrimination. *Allen*, 545 F.3d at 394. To establish a prima facie case, a plaintiff must show: (1) he is a member of a protected class, (2) qualification for the job in question, (3) an adverse employment action, and (4) circumstances that support an inference of discrimination. *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)). The burden then shifts to the defendant-employer to provide a "legitimate nondiscriminatory reason for the adverse employment action." *Allen*, 545 F.3d at 394 (quoting *Ercegovich*, 154 F.3d at 350). Once the defendant provides such a legitimate reason, the burden reverts to the plaintiff to show that the employer's explanation is pretext for discrimination. *Id.*

Here, Defendant does not contest that Gibson has met his prima facie burden and expressly acknowledges that it did not move for summary judgment on that ground. (Doc. # 33 at 3). Accordingly, for purposes of deciding Defendant's motion, the Court can fast forward to the ultimate issue of whether there is a genuine issue of material fact that Plaintiff was terminated for a discriminatory reason. *See Phelps*, 986 F.2d at 1023 (noting that the court "need not review the sufficiency of the plaintiff's prima facie case and that it may instead address the ultimate issue of whether the plaintiff has established discrimination").

Defendant asserts that Plaintiff's failure to address safety violations by his team members was a legitimate, nondiscriminatory reason for his termination. (Doc. # 27 at 8-9). In support of this contention, Defendant states that following the incident where a pallet of plywood was dropped, Plaintiff left the site of the accident without "determining

the impact or evaluating the situation." (*Id.* at 3).  However, Plaintiff contends that he left the site of the accident in order to immediately contact his supervisor.  (Doc. # 32 at 2). In further support of its argument, Defendant points to video evidence that it says illustrates Plaintiff's ignoring several other safety hazards and failing to supervise his team and ensure they were not committing safety violations.  (Doc. # 27 at 3-4).  Part of Plaintiff's job required him to "[n]ever walk past an unsafe or at risk situation."  (*Id.* at 9). Moreover, the Report of the incident states that Plaintiff's actions constituted a "serious safety offense that allowed employees to remain in an unsafe working condition without [Gibson's] interceding."  (Doc. # 27-3 at 36).

As Defendant has pointed out, a safety offense or a failure to supervise subordinates has been recognized to be a legitimate, nondiscriminatory reason to terminate an employee.  *See Back v. Nestle USA, Inc.*, 694 F.3d 571, 579 (6th Cir. 2012). Similarly, violating a company's safety rules or code of conduct has also been considered a legitimate reason supporting termination.  *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012).  Because Defendant's burden is "merely a burden of production, not of persuasion . . . it does not involve a credibility assessment."  *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009).  For this reason, Defendant's proffered legitimate, nondiscriminatory reason for Plaintiff's firing—violation of safety precautions by him and his team—satisfies its burden of production.

In response, Plaintiff has failed to demonstrate that Defendant's proffered justification for his termination was pretextual.  Pretext can be shown through proving the explanation "(1) had no basis in fact, (2) did not actually motivate the challenged conduct, or (3) is insufficient to explain the challenged conduct."  *Upshaw*, 576 F.3d at 586. The

plaintiff must prove the proffered reason was pretext by a preponderance of the evidence. *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 607 (6th Cir. 2019).

To avoid summary judgment on the first basis, Plaintiff can show that Defendant's reasons for termination "never occurred or were factually false." *Brown v. Kelsey-Hayes Co.*, 814 F. App'x 72, 81 (6th Cir. 2020) (citing *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 470 (6th Cir. 2002)). Plaintiff cannot demonstrate a genuine issue as to pretext on this first basis because the incident in which he failed to properly respond to violations of the company's safety policy was captured entirely on videotape and memorialized in the Report. (Docs. # 27-1 at 42 and 27-3 at 36). In fact, the Report lists a number of safety violations committed by Plaintiff and his team, including "[w]alk[ing] past a broom lying on the floor"; "[t]wo employees standing in blue aisle where forklift activities [were] taking place"; "[o]ne employee walk[ing] in front of lift to get on [the] other side of [the] press while fork lift activities were taking place"; and not "stop[ping] the forklift that spilled the pallet; allow[ing] him to continue working." (Doc. # 27-3 at 36). Further, Plaintiff himself admitted in his deposition that his team members committed multiple safety violations on the day in question and that he was responsible for ensuring his team conducted their work in a safe manner. (Doc. # 27-1 at 26, 58-63).

To succeed on the second basis, that the employer's explanation did not actually motivate the challenged conduct, Plaintiff must point to evidence "which tends to prove that an illegal motivation was *more* likely than that offered by the defendant." *Brown*, 814 F. App'x at 82 (quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)). Here, Plaintiff has provided evidence that his supervisor, Stearns, asked,

9

"when are you going to retire?" and "when are you getting out of here?," on at least five or six occasions between 2016 and 2017. (Doc. # 27-1 at 63, 68, 74). Plaintiff's argument is bolstered by the fact that Stearns took part as a decision-maker in Plaintiff's termination. (Doc. # 27 at 5). This is the only evidence Plaintiff produces supporting an inference of discrimination, however. Therefore, the question is whether a reasonable juror considering that evidence could conclude that Plaintiff's age motivated his termination.

In evaluating discriminatory statements, the Court must first look to the identity of the speaker. *Ercegovich*, 154 F.3d at 344. While isolated remarks by individuals "with no managerial authority over the challenged personnel decision is not considered indicative of age discrimination," statements by those who "played a meaningful role in the decision to terminate the plaintiff" are relevant. *Id.* at 354-55. This is so even when the individual "did not directly exercise their authority to fire the plaintiff." *Id.* at 354. Here, Stearns was involved in the decision to terminate Plaintiff. (Doc. # 27-5 at 1-2). Even though upper management ratified this decision, for the purposes of summary judgment, the Court must assume that Stearns "did in fact play a meaningful role in th[is] decision[]." *Ercegovich*, 154 F.3d at 355.

However, the inquiry does not end there. It is also necessary to evaluate the substance of the statements to determine "their relevancy to a plaintiff's claim that an impermissible factor motivated the adverse employment action." *Id*. Plaintiff accuses Stearns of making similar statements on five or six occasions—"when are you going to retire?" and "when are you getting out of here?" (Doc. # 27-1 at 63, 70, 74). Typically, "isolated and ambiguous comments 'are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination.'" *Phelps*, 986 F.2d at 1025 (quoting

*Gagne v. Northwestern Nat. Ins. Co.*, 881 F.2d 309, 314 (6th Cir. 1989)).   Further, questions about retirement are "not evidence of 'inaccurate and stigmatizing stereotypes,' as they simply "acknowledge the truth that workers near the age of 60 are nearer to retirement." *Williams*, 161 F. App'x at 534 (quoting *Rowan*, 360 F.3d at 548).  Stearns's questions about Plaintiff's retirement were likely general inquiries about Plaintiff's plan for retirement, were isolated to five or six comments made over a period of two years, and did not suggest that Plaintiff retire or include stigmatizing stereotypes.  For example, in Plaintiff's deposition he states that Stearns asked "[w]hen are you going to retire?  When are you getting out of here?," and when Plaintiff responded, Stearns "just laughed."  (Doc. # 27-1 at 63, 70).  Further, Plaintiff describes his relationship with Stearns as a friendship and admits that he was never asked to retire and Stearns's questions never included references to Plaintiff's age.  (*Id.* at 69-70).

In *Woythal v. Tex-Tenn Corp.*, a factually similar case where the plaintiff's only evidence of discrimination was a supervisor's questions regarding his retirement, the Sixth Circuit found that summary judgment was appropriate because no reasonable jury could consider questions about retirement alone as "evidence of intentional age discrimination."  112 F.3d 243, 247 (6th Cir. 1997).  The Sixth Circuit reasoned that a supervisor's questioning about retirement may be sufficient to defeat summary judgment if "the employer initiate[d] the questioning and then pointedly suggest[ed] retirement."  *Id.* But Plaintiff has never contended that Stearns suggested that he retire.  (Doc. # 27-1 at 69).  Accordingly, Plaintiff has not provided evidence "which tends to prove that an illegal motivation was *more* likely than that offered by the defendant," as Stearns's statements alone are not enough to support an inference of age discrimination.  *Brown*, 814 F. App'x

11

at 82 (quoting *Manzer*, 29 F.3d at 1084).

Third, Plaintiff may show a dispute of fact as to pretext if the defendant's offered explanation is insufficient to justify Plaintiff's termination. *Upshaw*, 576 F.3d at 586. A showing of this nature is typically made by offering evidence that "other employees, particularly employees not in the protected class, were not fired even though they engaged in conduct substantially identical to that which the employer contends motivated its discharge of the plaintiff." *Smith v. Hinkle Mfg., Inc.*, 36 F. App'x 825, 829-30 (6th Cir. 2002) (alteration omitted) (quoting *Manzer*, 29 F.3d at 1084). Defendant has provided evidence that Roy, the fifty-seven-year-old forklift driver involved in the same safety violation as Plaintiff, was also fired for failing to follow safety procedures. (Doc. # 27-5 at 2). In his Response, Plaintiff does not provide contrary evidence that individuals not in the protected class who engaged in similar conduct as him were not fired.[2] As discussed above, violating a company's safety protocols is a nondiscriminatory, legitimate reason for termination. *See Chattman*, 686 F.3d at 349. Because Plaintiff's job required him to look after the safety of himself and his team members, it follows that failure to do so could justifiably result in termination. Thus, Plaintiff cannot show pretext under the third basis.

Lastly, Plaintiff urges this Court to rule in his favor under a "mixed-motive" standard—by finding that a reasonable juror could conclude that age was at least a motivating factor in his termination. (Doc. # 32 at 11). Although a plaintiff may show pretext based on a "mixed-motive" theory under Title VII, the Supreme Court has held in

---

[2]     Plaintiff stated he "presented proof that he was treated differently . . . than other employees in terms of discipline involved in the incident" in his Response, but then never points to any individual who was treated differently. (Doc. # 32 at 4). Because Plaintiff failed to develop this argument with specificity, it is deemed forfeited. *See Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 558 (6th Cir. 2008).

the context of age discrimination claims under the ADEA that "the plaintiff retains the burden of persuasion to establish that age was the "'but-for' cause of the employer's adverse action." [3]   *Gross*, 557 U.S. at 177.  In other words, a mixed-motive theory is not actionable in the age discrimination context.  *See Bondurant v. Air Line Pilots Ass'n, Int'l.*, 679 F.3d 386, 394 (6th Cir. 2012).  Thus, Plaintiff's argument based on "mixed-motive" theory is misplaced.

Plaintiff has not identified a dispute of material fact concerning his termination, and has admitted that the only basis for his age-discrimination claim is several questions by Stearns about when he was planning to retire.  Because no reasonable juror could find pretext based solely on that evidence, Defendant is entitled to summary judgment on Plaintiff's age discrimination claim.

### 2.   *Breach of Contract Claim*

#### a.   ERISA Coverage

Second, Defendant argues that Plaintiff's breach of contract claim fails as a matter of law because it is preempted by the Employee Retirement Income Security Act ("ERISA").  (Doc. # 27 at 13).  ERISA supersedes "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title . . . ."  29 U.S.C. § 1144(a).  Thus, the relevant question is whether the Plan at issue is covered under ERISA and therefore federal common law relating to ERISA,

---

[3]      Title VII provides that "unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a *motivating* factor for any employment practice, even though other factors also motivated the practice."  42 U.S.C. § 2000e-2(m) (emphasis added).  This statute allows for courts to find impermissible discrimination when there are both legitimate reasons and illegitimate reasons for a plaintiff's termination.  *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 93 (2003).  Notably missing from the above list covered by § 2000e-2(m) is age.

instead of Kentucky common law relating to breach of contract, applies.[4]  *See Cassidy v. Akzo Nobel Salt, Inc.*, 308 F.3d 613, 615 (6th Cir. 2002).

Generally, ERISA applies to an employee benefit plan "established or maintained by any employer engaged in commerce or in any industry or activity affecting commerce." 29 U.S.C. § 1003(a)(1).  One category of ERISA plans is an employee welfare benefit plan, defined as "any plan . . . established or maintained by an employer . . . for the purpose of providing for its participants . . . (A) benefits in the event of . . . unemployment." *Cassidy*, 308 F.3d at 615 (quoting 29 U.S.C. § 1002(1)).  While the Sixth Circuit has decided "that not all severance pay plans are ERISA plans," many are categorized as welfare benefit plans covered by ERISA.  *Id.* at 616.  To determine if a severance plan is within the scope of ERISA, two considerations are assessed: "1) whether the employer has discretion over the distribution of benefits, and 2) whether there are on-going demands on an employer's assets."  *Kolkowski v. Goodrich Corp.*, 448 F.3d 843, 848 (6th Cir. 2006).  As to the first factor, where benefits are lump sum or "involve 'simple or mechanical determinations,'" the plan is likely not an ERISA plan.  *Cassidy*, 308 F.3d at 616 (quoting *Sherrod v. Gen. Motors Corp.*, 33 F.3d 636, 638-39 (6th Cir. 1994)).  Alternatively, if the plan requires analyzing "'each employee's particular circumstances in light of the appropriate criteria,' the severance plan is probably an ERISA plan."  *Id.* (quoting *Sherrod*, 33 F.3d at 638-39).  As to the second consideration, a plan will likely be covered by ERISA if the employer "pay[s] benefits on a regular basis, and thus faces . . . periodic demands on its assets that create a need for financial coordination and

---

[4]     The Court notes that in some contexts, preemption under ERISA equates to dismissal of a plaintiff's claims, but not when ERISA's civil enforcement provision, 29 U.S.C. § 1132(a), is implicated as discussed below.  *See infra* Part III.2(b); *Warner v. Ford Motor Co.*, 46 F.3d 531, 534 (6th Cir. 1995) (en banc).

control."  *Id.* (quoting *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 12 (1987)).
However, most importantly, "[t]he hallmark of an ERISA benefit plan is that it requires an
ongoing administrative program to meet the employer's obligation."  *Id.* (internal quotation
marks omitted) (quoting in a parenthetical *Swinney v. Gen. Motors Corp.*, 46 F.3d 512,
517 (6th Cir. 1995)).

The Plan at issue here provides for lump-sum payment, the calculation of which is
based on the participant's salary and years of service, and is administrated by the
Severance Pay Committee, which also handles adverse benefit determinations and
appeals.  (Doc. # 27-6 at 3-16).  Defendant's administrative scheme, including the
calculation of benefits and the Committee's role in determining who is eligible for
severance, supports a finding that the Plan is covered by ERISA; while the lump-sum
payment to those covered indicates that the Plan falls outside ERISA's purview.  Each of
these Plan features will be discussed in turn.

Important to whether there is an ongoing administrative program, signifying a likely
ERISA plan, is whether the "reason for termination is relevant to an employee's eligibility
for severance benefits . . . because such a determination requires the exercise of some
managerial discretion."  *Campbell v. Int'l Paper*, 83 F. App'x 93, 96 (Cole, J., dissenting).
In other circuits, this managerial discretion exercised through the plan and requiring an
administrative scheme, has been held to be indicative of an ERISA welfare benefit plan.
*See Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 76 (2d Cir. 1996) (plan
covered by ERISA where managerial discretion included an analysis of "each employee
in light of certain criteria," as well as whether an employee was terminated for
"substantially deficient performance"); *Peterson v. E.F. Johnson Co.*, 366 F.3d 676, 679-

80 (8th Cir. 2004) (plan covered by ERISA in part because the plan "required the company to engage in a case-by-case review of employees . . . to determine whether a particular termination was with or without cause").  Similarly, the Western District of Kentucky has held that a severance plan requiring a "case-by-case review of employees to determine their particular eligibility" suggests a plan covered by ERISA.  *Barrow v. Aleris Int'l, Inc.*, No. 1:07CV-110-JHM, 2007 WL 3342306, at *4 (W.D. Ky. Nov. 7, 2007).  In Defendant's Plan, the Committee is responsible for determining whether an employee was "terminated by the Company due to unacceptable job performance or for other disciplinary reasons." (Doc. # 27-6 at 6).  If so, that employee would not be eligible for severance pay, unless approved by the Committee in its "sole discretion."  (*Id.*).  This kind of managerial discretion supports a finding that the Plan at issue here is a welfare benefit plan under ERISA.

At the same time, a one-time, lump-sum payment, featured in the Plan in this case, is typically a characteristic of a plan falling outside the scope of ERISA.  *See generally Fort Halifax Packing Co.,* 482 U.S. at 11-12.  The one-time payments contemplated in *Fort Halifax Packing* required no administrative scheme because the statute at issue simply required a "lump-sum payment triggered by a single event"—the elimination of a packing plant.  *Id.* at 12.  All the employer had to do upon the plant's closure was write a single check to each of the plant's workers, based on how many years they had been employed by the employer.  *Id.* at 5.  The plan at issue in *Fort Halifax Packing* was accordingly held not to be covered by ERISA.  Yet, the Court in *Fort Halifax Packing* preserved the possibility that a plan with a one-time, lump-sum payment could qualify as an ERISA plan.  *Id.* at 14 n.9.  The Court used as an example a plan that distributed death

benefits in a lump sum payment to beneficiaries.  *Id.*  The Court reasoned that although the death benefit "may represent a one-time payment from the perspective of the beneficiaries," the employer would need to make "regular payments to survivors on an ongoing basis."  *Id.*

In the same vein, the Sixth Circuit has recognized that a plan "that provides for a lump-sum payment to an employee may qualify as an ERISA benefits plan if the employer is potentially required to pay out benefits on a regular basis."  *Hughes v. Zurz*, 298 F. App'x 404, 414 (6th Cir. 2008).  Meaning that if the employer may have to pay out benefits in multiple future instances, "the ongoing, predictable nature of this obligation therefore creates the need for an administrative scheme to process claims and pay out benefits, whether those benefits are received by beneficiaries in a lump sum or on a periodic basis." *Id*. (quoting *Fort Halifax Packing,* 482 U.S. at 14 n.9).  For example, in *Barrow*, the court found that the severance plan at issue "require[d] some ongoing administration," because the defendants' obligations were "recurring as employees [were] terminated."  2007 WL 3342306, at *4 (quoting *Mullaly v. Ins. Servs. Office, Inc.*, 395 F. Supp. 2d 290, 296 (M.D.N.C. 2005)); *see also Fort Halifax Packing,* 482 U.S. at 18 n.10 (noting that in another set of cases, an employer's "commitment to pay severance benefits to employees as each person left employment" "created the need for an administrative scheme to pay these benefits on an ongoing basis") (citing *Holland v. Burlington Indus., Inc.*, 722 F.2d 1140 (4th Cir. 1985), *aff'd*, 477 U.S. 901 (1986); *Gilbert v. Burlington Indus, Inc.*, 765 F.2d 320 (2d Cir. 1985), *aff'd*, 477 U.S. 901 (1986)).

Because Defendant's duty to pay severance under the Plan arises upon the termination of an employee, this "necessarily requires some ongoing administration."  *See*

*Barrow*, 2007 WL 3342306, at *4.   Accordingly, based on the need for ongoing administration combined with the Committee's discretion to determine whether a particular employee was terminated due to unacceptable job performance or other disciplinary reasons, the Court concludes that the Plan here is an ERISA welfare benefit plan.[5]

### b.   Plaintiff's ERISA Claim

Because Plaintiff is seeking the remedy of payment of plan benefits, he has a cause of action under 29 U.S.C. § 1132(a)(1)(B).   This provision allows for a plan beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, [or] to enforce his rights under the terms of the plan."   29 U.S.C. § 1132(a)(1)(B). Although Plaintiff's claim is styled as a breach of contract claim, courts have allowed these types of claims to be construed as ERISA actions under 29 U.S.C. § 1132(a)(1)(B).   *See Warner*, 46 F.3d at 534-35 (holding that when a state-law claim is essentially a claim for benefits under 29 U.S.C. § 1132(a)(1)(B), the state claim is completely preempted by ERISA, which confers federal subject matter jurisdiction); *see also Mazur v. Unum, Ins. Co.*, F. App'x 518, 521 (6th Cir. 2014) (approving of approach taken by district court of construing state contract claim as § 1132(a)(1)(B) claim and proceeding to analyze the claim, as opposed to dismissing claim without prejudice and granting leave to amend).

---

[5]      Further supporting this conclusion is the fact that the Plan document itself notifies participants of their rights under ERISA, stating that "[a]s a participant in the Plan, you are entitled to certain rights and protections under ERISA."   (Doc. # 27-6 at 15).   Moreover, Plaintiff in his Response, does not deny Defendant's contention that the Plan is covered by ERISA, thus forfeiting any argument as to ERISA preemption.  (Doc. # 32 at 12); *see Nance*, 527 F.3d at 558.

Under normal circumstances, the administrator would expressly deny a plaintiff's claim for benefits and create an administrative record documenting its decision-making. However, it is clear from the record that neither the Committee nor Defendant provided Plaintiff with any notification of denial of benefits.  (Doc. # 32 at 2).  Defendant does not deny this fact and instead relies on its theory that denial would have been proper because Plaintiff is ineligible under the Plan.  (Doc. # 33 at 9).  ERISA requires that a participant be given "adequate notice in writing" that a "claim for benefits under the plan has been denied" and that the written notice "set[] forth the specific reasons for such denial."  29 U.S.C. § 1133.  Because Defendant did not provide Plaintiff with any notice or reasoning denying severance benefits prior to the instant litigation, this Court will assume without deciding that Defendant violated § 1133.

Due to Defendant's failure to notify Plaintiff of the denial of benefits under § 1133, *de novo* review is appropriate.  *Reedstrom v. Nova Chems., Inc.*, 234 F. Supp. 2d 787, 801 (S.D. Ohio 2002), *aff'd,* 96 F. App'x 331 (6th Cir. 2004).  Under the *de novo* standard of review, the Court must only consider evidence presented to the plan administrator, here the Committee, to determine whether the plaintiff is entitled to benefits.  *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir. 1990).  Here, neither Defendant nor the Committee has provided an administrative record associated with the denial of Plaintiff's claims.  However, the absence of an administrative record does not preclude the Court from deciding Plaintiff's ERISA claim on the merits.  *Reedstrom*, 234 F. Supp. 2d at 798.  In *Reedstrom*, the defendant had not provided the plaintiff with a written denial of benefits and "no administrative records exist[ed]" aside from the plan document itself.  *Id.* at 801-02.  Even without the benefit of an administrative record, the court proceeded to review

the denial of benefits *de novo* based on the plain language of the plan document.  *Id.* at 802-04.  On appeal, the Sixth Circuit affirmed, holding that the district court properly ruled despite the absence of an administrative record "because the clear language of the plan and the undisputed factual context of the case [were] all that [was] needed to understand why [the defendant] denied benefits."  96 F. App'x 331, 338 (6th Cir. 2004).  Similarly, in the instant case, the availability of the plan document and the undisputed nature of Plaintiff's eligibility for severance benefits provide the Court with the necessary information to evaluate Plaintiff's claim.

Even under *de novo* review, Plaintiff is not entitled to severance benefits under the plain language of the Plan.  The pertinent section of the Plan, § 2.02, provides that a participant is eligible for severance only if terminated without cause and due to a reduction of force or the elimination of an employee's position.  (Doc. # 27-6 at 5).  Section 2.02 further states that "any Participant whose employment with the Company is terminated by the Company due to unacceptable job performance . . . shall not be eligible for benefits under the Plan unless otherwise approved in the Committee's sole discretion."  (*Id.*). Defendant contends that Plaintiff was not terminated due to either a reduction of force or elimination of his position, (Doc. # 27 at 14), and Plaintiff does not contest this assertion in his Response.  (Doc. # 32 at 12-13).  Furthermore, Defendant's proffered reason for terminating Plaintiff, safety violations by him and his team members, clearly would be considered termination "due to unacceptable job performance," and thus constitutes yet another basis for denying Plaintiff severance benefits under the terms of the Plan.

Instead of contesting his ineligibility under the Plan, Plaintiff contends that Defendant committed a procedural violation of ERISA by not reviewing his request for

severance or providing him with a written denial.  (*Id*.).  But even assuming that Defendant violated § 1133, remand to the Committee for a review of Plaintiff's claim would be futile because, as discussed above, he is ineligible for benefits under the plain language of the Plan.   A number of Sixth Circuit cases have held that a violation of § 1133 may go unremedied when the plaintiff is clearly not entitled to benefits under the governing ERISA plan and remand "would represent a useless formality."  *McCartha v. Nat'l City Corp.*, 419 F.3d 437, 444-47 (6th Cir. 2005) (internal quotations omitted) (quoting *Kent v. United of Omaha Life Ins. Co.*, 96 F.3d 803, 807 (6th Cir. 1996)).  Because remand would be futile, and Plaintiff is not entitled to benefits under the plain language of the Plan, Defendant is entitled to summary judgment on Plaintiff's breach of contract claim.

## IV.   CONCLUSION

For the reasons articulated herein, **IT IS HEREBY ORDERED** as follows:

(1)    Defendant's Motion for Summary Judgment (Doc. # 27) is **GRANTED**;

(2)    Plaintiff's Complaint (Doc. # 1-2) is **dismissed with prejudice**; and

(3)    A Judgment shall be filed contemporaneously herewith.

This 19th day of October, 2020.



Signed By:

**_David L. Bunning_**

**United States District Judge**

J:\DATA\ORDERS\London\2019\19-37 MOO Gibson v. AHF.docx

21